Opinión concurrente emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la cual se le une el Juez Asociado Señor Rebollo López.
La controversia por resolver en este caso es si, en virtud de la Ley Núm. 33 de 27 de julio de 1993 (34 L.P.R.A. see. 1026 et seq.), que excluyó del privilegio de libertad bajo palabra a toda persona que utilice un arma de fuego en la comisión de un delito grave o su tentativa, la Junta de Libertad bajo Palabra puede asumir jurisdicción en un *910 caso en que el acusado —conforme un preacuerdo— se declaró culpable de los delitos imputados, luego de eliminarse de la acusación la alegación del uso de arma de fuego en la comisión del delito base, y que se hizo la alegación de culpabilidad bajo esos términos. Sólo puedo concurrir con el resultado del dictamen del Tribunal, ya que entiendo que resulta medular a la controversia ante nuestra consideración la discusión sobre la naturaleza de las alegaciones preacordadas y el contenido de las advertencias que se le deben hacer al acusado previo a que éste haga la alegación de culpabilidad. La ausencia de una discusión profunda sobre estos asuntos me impide prestarle mi conformidad a la sentencia dictada, ya que sostengo que, según suscrita, se queda trunca. Después de todo, este caso se da en el contexto de una alegación preacordada.
I
Iniciamos exponiendo el trasfondo fáctico y procesal que dio lugar a la controversia traída ante nuestra atención, sobre el cual no hay controversia.
Por hechos ocurridos el 31 de marzo de 1998, Elvin Rivera Beltrán (peticionario o Rivera Beltrán) fue acusado por los delitos de tentativa de asesinato (3 cargos), por infracción de los Arts. 4, 6 y 8 de la Ley de Armas de Puerto Rico (5 cargos), 25 L.P.R.A. sees. 414, 416 y 418, por recibo de bienes apropiados ilegalmente (3 cargos) y por robo domiciliario (1 cargo). Se alegó en la denuncia, y luego en la acusación, la utilización de un arma de fuego en la comisión de los delitos.
El 16 de mayo de 2000, durante la celebración del juicio criminal ante jurado, las partes manifestaron haber llegado a unos acuerdos y el Ministerio Público solicitó, como parte de estos acuerdos, las siguientes enmiendas a las acusaciones:
*911 Elvin Rivera Beltrán: Se elimine la alegación de reincidencia; eliminar toda referencia al uso de arma de fuego en los casos de Tentativa de Asesinato, Infr. Artículos 8 y 6 de Armas. En el caso de Robo Domiciliario en el mismo se eliminaría el agravante donde indica que “los hechos fueron cometidos en la residencia de los perjudicados y utilizaron armas de fuego y una cuchilla para cometer el delito”. (Enfasis nuestro.) Minuta de 16 de mayo de 2000, Apéndice de la Petición de certiorari, pág. 52.
A esos efectos, se enmendó la acusación para reflejar los acuerdos entre el acusado y el Ministerio Público. El acusado se declaró entonces culpable por confesión en corte abierta de todos los delitos y el preacuerdo fue avalado por el tribunal. El cargo por violación al Art. 4 de la Ley de Armas de Puerto Rico, ante, fue imputado en su modalidad de delito menos grave. Así se hizo constar en la sentencia dictada. Apéndice de la Petición de certiorari, pág. 54.
El 22 de mayo de 2000, el peticionario fue sentenciado a una pena concurrente de quince años de cárcel por todos los delitos. Apéndice de la Petición de certiorari, pág. 58.
Eventualmente, el peticionario solicitó a la Junta de Libertad bajo Palabra (Junta) que lo evaluara para disfrutar del beneficio de libertad bajo palabra. El 12 de julio de 2004, la Junta emitió una resolución mediante la cual se declaró sin jurisdicción por disposición expresa de la Ley Núm. 33, según enmendada, ante (Ley Núm. 33), la cual, como se señaló, excluye del privilegio de libertad bajo palabra a toda persona que utilice un arma de fuego en la comisión de un delito grave o de su tentativa.
Inconforme con esta determinación, el peticionario presentó un recurso de revisión ante el Tribunal de Apelaciones. En el recurso presentado apuntó que la Junta había errado al declararse sin jurisdicción, porque la sentencia que le fue impuesta eliminó, expresamente, la referencia al uso de arma de fuego. En su escrito, expresó que fue su objetivo al declararse culpable que se eliminara tal alegación, de suerte que pudiera cualificar, en su momento, *912 para los beneficios de libertad bajo palabra. El Ministerio Público no ha refutado tal aseveración.
El Tribunal de Apelaciones confirmó la resolución de la Junta. El foro apelativo intermedio resolvió, sin mayor discusión, que el texto de la ley era claro al privar de jurisdicción a la Junta en casos donde se haya utilizado un arma de fuego en la comisión de un delito grave o de su tentativa. Indicó que el hecho de que como resultado de la alegación preacordada se eliminara la alegación relacionada con el uso de un arma, era inconsecuente, porque la transacción entre el acusado y el Ministerio Público no podía conferirle jurisdicción a la Junta allí donde la ley se la negaba.
Insatisfecho nuevamente, el peticionario presentó un escrito de apelación ante este Tribunal, en el que señaló como error lo siguiente:
Erró el Tribunal de Apelaciones al confirmar la resolución emitida por la Junta de Libertad bajo Palabra, en la agencia se declaró sin jurisdicción para considerar el referido del Sr. Elvin Rivera Beltrán en menosprecio de lo resuelto por el tribunal sentenciador que el Sr. Rivera Beltrán no utilizó un arma de fuego en la comisión del delito violentando así el derecho constitucional del apelante a un debido proceso de ley, a la presunción de inocencia, al derecho a un juicio justo e imparcial, violentando a su vez la separación de poderes. Petición de certiorari, pág. 5.
El 22 de julio de 2005 acogimos la apelación presentada como una petición de certiorari y expedimos el auto. El peticionario presentó el alegato correspondiente y, posteriormente, el Procurador General hizo lo propio en representación de la Junta. Estando en posición de resolver, pasamos a así hacerlo.
II
Como indicamos inicialmente, la cuestión que se ha de resolver es si la Ley Núm. 33 le impide a la Junta asumir *913 jurisdicción para atender la solicitud del peticionario de excarcelación bajo palabra. Ello en virtud de que en la sentencia dictada en este caso se eliminó la alegación de utilización de un arma de fuego en la comisión del delito base, como resultado del preacuerdo al que llegó el Ministerio Público con la defensa y que fue avalado por el tribunal sentenciador. Esta alegación fue eliminada de la acusación enmendada.
El peticionario sostiene que nada impide que la Junta asuma jurisdicción y atienda su solicitud de libertad bajo palabra. Argumentó en su recurso que la Junta no puede hacer una determinación de hechos —que se utilizó un arma durante la comisión del delito— contraria a lo que adjudicó ya el foro sentenciador al recaer el fallo condenatorio en este caso, para rehusarse con esa determinación a atender su petición. Indicó que al eliminarse de la acusación la alegación del uso de un arma de fuego, ese hecho no fue probado más allá de duda razonable ante el juzgador de los hechos ni fue admitido por el acusado, por lo que no puede servir de base o de fundamento para negarse a atender su petición de libertad bajo palabra. El peticionario basó su reclamo, principalmente, en lo dispuesto por el Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, 530 U.S. 466 (2000), y su progenie.
El Procurador General, por su parte, adelantó los siguientes fundamentos para sostener la determinación de la Junta, a saber: Primero, que la alegación preacordada no puede impedirle a la Junta que cumpla con la Ley Núm. 33 y actúe acorde con ésta. Segundo, que con la alegación de culpabilidad por los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, ante —poseer y portar un arma cargada sin licencia— se probó “la presencia de un arma de fuego en la escena de los hechos”, lo que era suficiente para cumplir con la Ley Núm. 33. Alegato del Procurador General, págs. 13-15. En cuyo caso, era razonable que la Junta concluyera, al evaluar el expediente, que el peticionario “usó la *914 misma durante los hechos”. Finalmente, adujo que, existiendo evidencia sustancial en el expediente de la agencia sobre ese particular, procede confirmar la determinación de la Junta. En específico, el Procurador General apuntó que la Junta tomó conocimiento judicial del expediente criminal oficial del peticionario donde constan las acusaciones presentadas originalmente en este caso.
Pasemos entonces a evaluar los planteamientos de las partes. Iniciamos nuestra discusión repasando la naturaleza de la alegación preacordada, pues es en este contexto que se plantea la controversia de autos. Luego entonces discutiremos el alcance la Ley Núm. 33.
h—I ¡—I

Las alegaciones preacordadas

La decisión de cuándo encausar a un sospechoso y qué delito imputar es una decisión de la entera incumbencia del Poder Ejecutivo. Pueblo v. Castellón, 151 D.P.R. 15, 24 (2000). Así también es prerrogativa del Poder Ejecutivo, una vez presentada la acusación correspondiente, solicitar la reducción o archivo de cargos criminales, bien como parte de un proceso de negociación preacordada o no.
Las alegaciones preacordadas son un componente indispensable del sistema de justicia penal. Constituyen un acuerdo de voluntades de naturaleza sui generis que depende, para su consumación, de la aprobación final del tribunal. Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 194 (1998). No hay duda de que éstas representan el mecanismo principal de disposición de los casos penales. Pueblo v. Figueroa García, 129 D.P.R. 798, 804 (1992) (“Sin las alegaciones preacordadas sería difícil enjuiciar a todas las personas acusadas de cometer delitos dentro de los términos requeridos por el ordenamiento procesal y por la Constitución”). Véase Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984). Véase, también, Santobello v. New York, 404 U.S. 257, 260-261 (1971) (“the disposition of criminal char *915 ges by agreement between the prosecutor and the accused, sometimes loosely called ‘plea bargaining’ is an essential component of the administration of Justice”); Brady v. United States, 397 U.S. 742 (1970).(1)
Son innumerables las razones que explican la razón de ser de la alegación preacordada y la utilidad que ésta supone tanto para el Ministerio Público como para el acusado. Véase escolio 2, infra. A modo de ejemplo, valga recalcar que es usual que un acusado, confrontado con una acusación por un delito, o bajo unas condiciones que le inhabilite para recibir los beneficios de una sentencia suspendida o de la libertad bajo palabra, procure negociar con la Fiscalía el declararse culpable de otro delito —o bajo otras circunstancias— que no conlleve tales consecuencias. E.g., 5 LaFave, Israel and King, Criminal Procedure Sec. 21.1, pág. 5 (1999) (“by his plea, the defendant may avoid a high statutory minimum sentence, or a statutory bar to probation” (énfasis nuestro)).
La Regla 72 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, regula el procedimiento de las alegaciones preacordadas y su efecto una vez han sido sometidas para la aprobación del tribunal. Mediante la utilización de este mecanismo el acusado, renunciando a su derecho a no incriminarse y a someterse a un juicio por jurado, acuerda declararse culpable en corte abierta del delito negociado. Toda vez que una declaración de culpabilidad conlleva la renuncia de estos derechos constitucionales, ésta tiene que ser voluntaria, con conocimiento y con conciencia de todas las implicaciones o consecuencias directas que conlleve. Véanse: Brady v. United States, ante, pág. 748; Henderson v. Morgan, 426 U.S. *916 637 (1976). Véase, además, LaFave, Israel and King, supra, Sec. 21.1.
De ahí que la Regla 72(7) de Procedimiento Criminal, ante, provea, en lo pertinente, que aceptada la alegación preacordada por el tribunal, el juez “deberá cerciorarse de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado ...”. Aunque el procedimiento para determinar si una declaración de culpabilidad es voluntaria e inteligente “no requiere determinado ritual”, el juez está obligado a inquirir del acusado si comprende la naturaleza de su declaración de culpabilidad y si tiene pleno conocimiento de sus implicaciones, para lo cual debe advertirle de las consecuencias directas de ésta. Díaz Díaz v. Alcaide, 101 D.P.R. 846, 857 (1973). Una declaración de culpabilidad, sin pleno conocimiento, conformidad y voluntariedad por parte del imputado, puede ser impugnada por ofender el debido procedimiento de ley. Mabry v. Johnson, 467 U.S. 504, 509 (1984) (“only when it develops that defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause”). Véase Santobello v. New York, ante, págs. 261-261. Véase, además, E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. Ill, See. 20.3, págs. 591-592.
El pleno conocimiento requiere, necesariamente, que se le informe al acusado de la sentencia a que se expone por ser esto una consecuencia directa de su declaración de culpabilidad. En Díaz Díaz v. Alcalde, ante, pág. 857, indicamos que el juez debe informarle al acusado “de la pena que el delito por el cual está procesado conlleva, haciéndole saber el mínimo y el máximo”. (Enfasis nuestro.) En la medida que el acusado no tenga la plena conciencia del castigo a que se expone, no es posible hablar de una declaración de culpabilidad “con conocimiento” como exige la Regla 72, ante; ésta sería constitucionalmente deficiente.
*917 Cabe preguntarse, entonces, si el acusado debe ser advertido también de que el delito por el que se declara culpable lo inhabilita para recibir los beneficios de la libertad bajo palabra. La respuesta tiene que ser en la afirmativa. No hay duda de que declararse culpable de un delito, que le impida al acusado cualificar para este beneficio, afecta el tiempo que la persona permanece encarcelada y, en su consecuencia, lo expone a un castigo mayor y más oneroso.
Habida cuenta de lo anterior, este es un factor que el acusado debe sopesar a la hora de tomar su decisión de declararse culpable y bajo qué términos, en vista del efecto que tendrá su declaración sobre el tiempo que permanecerá encarcelado. Véanse: Bye v. United States, 435 F.2d 177, 179 (2do Cir. 1970) (“We agree with the position ... that ineligibility for parole is indeed a consequence of the plea about which a defendant... must be informed”); Berry v. United States, 412 F.2d 189,192 (3er Cir. 1969) (“Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. When one enters a plea of guilty he should be told what is the worst to expect”); Harris v. United States, 426 F.2d 99 (6to Cir. 1970); Jenkins v. United States, 420 F.2d 433 (10mo Cir. 1970); Durant v. United States, 410 F.2d 689 (1er Cir. 1969); State v. Kovack, 453 A.2d 521, 525 (1982) (“a defendant must be informed of any period of parole ineligibility that is likely to become part of his sentence ... the court must make certain that defendant has been made aware of any loss of parole opportunities that may be a component of the sentence”); State v. Byrge, 614 N.W.2d 477, 495 (2000). Véase, además, LaFave, Israel and King, supra, Sec. 21.4(d), pág. 170 (“the better view is that the defendant should be advised if the offense to which he is pleading may not lead to parole”), y casos en su esc. 97.
El hecho de que el beneficio de la libertad a prueba sea una gracia legislativa ynoun derecho del convicto en nada *918 varía el resultado. La exigencia de “pleno conocimiento” de las consecuencias directas de la declaración de culpabilidad de la Regla 72 de Procedimiento Criminal, ante, es corolario del debido proceso de ley, pues tal declaración supone una renuncia de los derechos constitucionales.
IV

El régimen de libertad bajo palabra y la Ley Núm. 33

A. El sistema de libertad bajo palabra está reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. see. 1501 et seq. Mediante este sistema se permite que una persona que haya sido convicta y sentenciada a un término de reclusión cumpla con la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder la libertad. Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad. 4 L.P.R.A. sec. 1503; Maldonado Elías v. González Rivera, 118 D.P.R. 270, 275 (1987), voto particular del Juez Asociado Señor Hernández Denton.(2) Este privilegio es un componente del proceso de rehabilitación del confinado. Se considera que mientras disfrutan de ese proceso están, técnicamente, ex-tinguiendo su condena. Véase W.A. Logan, The Importance of Purpose in Probation Decision Making, 7 Buff. Crim. L. Rev. 171 (2003).
La Junta es el ente gubernamental facultado por ley para administrar el sistema de libertad bajo palabra. La Junta podrá decretar la libertad condicionada del convicto siempre y cuando éste cumpla con los requisitos establecidos por la ley o por los reglamentos. El Art. 2(a) de la Ley Núm. 118 (4 L.P.R.A. sec. 1502(a)) establece las condicio *919 nes generales que sopesa la Junta cuando evalúa una petición de excarcelación. Entre otras cosas, el artículo dis-pone:
... La libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza, que tal medida habrá de ayudar a la rehabilitación del delincuente. Para determinar si concede o no la libertad bajo palabra la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la libertad condicional del sujeto, y una evaluación que deberá someter a la Administración de Corrección.
La Junta tiene, como indicamos, discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales, siempre que no se trate de delitos excluidos de dicho beneficio y que la persona hubiese cumplido el término mínimo dispuesto por ley. Toro Ruiz v. J.L.B.P. y otros, 134 D.P.R. 161, 166 (1993); Ortiz v. Alcaide Penitenciaría Estatal, 131 D.P.R. 849, 858 (1992). Véase N. Cohen y J. Gobert, The Law of Probation and Parole, Colorado, Ed. Shepard’s/Mc Graw Hill, 1983, Sec. 3.01.
B. La Ley Núm. 33 enmendó, entre otros, el Art. 3(a) de la Ley Núm. 118, ante, para establecer que “[e]n los casos en que se determine que la persona utilizó o intentó utilizar un arma de fuego en la comisión de un delito grave o su tentativa, no se concederá el beneficio de la libertad bajo palabra”. (Énfasis nuestro.) 1993 (Parte 1) Leyes de Puerto Rico 174.(3) De igual forma, el Art. 2 de la Ley Núm. 33, ante, excluyó del beneficio de sentencia suspendida a las personas que hubieran utilizado “un arma de fuego en la comisión de un delito grave o tentativa”, enmendado a esos efectos la Ley de Sentencias Suspendidas y Libertad a *920 Prueba, Art. 2 de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. see. 1027.
Sólo en dos ocasiones anteriores hemos interpretado la Ley Núm. 33. En ambas ocasiones ha sido en el contexto de la imposición de una sentencia suspendida. En Pueblo v. Negrón Caldero, 157 D.P.R. 413, 422 (2002), indicamos que el propósito de esta ley fue “proteger a la sociedad puertorriqueña de los criminales de oficio” (énfasis suprimido), por lo que “excluyó del régimen de sentencia suspendida a los convictos de delito grave que hayan utilizado armas de fuego ilegalmente poseídas o portadas en la comisión del delito o su tentativa”. En igual sentido, Pueblo v. Álvarez Rodríguez, 154 D.P.R. 566, 570-571 (2001). Huelga apuntar que el mismo fundamento es extensible a los casos de libertad bajo palabra. Veamos los hechos de estos casos en detalle.
En Pueblo v. Álvarez Rodríguez, ante, el acusado enfrentaba cargos por el delito de asesinato en primer grado por haber dado muerte a dos personas al hacerle varios disparos a cada uno con un revólver. Además, enfrentaba cargos por infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, ante. Celebrado el juicio, éste fue declarado culpable de los cargos que pesaban en su contra. El foro de instancia dictó sentencia y le concedió el beneficio de una sentencia suspendida por entender que aplicaba al caso la norma establecida en Pueblo v. Zayas Rodríguez, 147 D.P.R. 530 (1999).
La controversia planteada fue si Álvarez podía ser acreedor a los beneficios de una sentencia suspendida, a la luz de la aprobación de la Ley Núm. 33, la cual no estaba vigente al momento de resolverse Pueblo v. Zayas Rodríguez, ante, por lo que este último no aplicaba. Determinamos, entonces, que el texto de la Ley Núm. 33 era claro y no podía ser ignorado. A esos efectos indicamos que “si alguien ha sido convicto de un delito grave o su tentativa, y utilizó o intentó utilizar un arma de fuego durante la co *921 misión de dicho delito, esta persona no tendrá derecho a una sentencia suspendida”. íd., pág. 571.(4) Expresamos que, aun cuando se considerara que la ley era “inflexible” y que ésta no representaba “la más sabia solución al problema del crimen en Puerto Rico”, no podíamos arrogarnos “poderes legislativos” e ignorar el mandato claro del legislador. Id.
Poco después de nuestra decisión en Pueblo v. Álvarez Rodríguez, ante, nos enfrentamos nuevamente a la Ley Núm. 33. En Pueblo v. Negrón Caldero, ante, pág. 417, en una intricada opinión, discutimos extensamente el historial legislativo de la Ley Núm. 33 para atender la controversia siguiente: “si una persona convicta por el delito de homicidio voluntario, cometido con un arma de fuego para la cual tenía licencia de poseer y portar, sigue siendo acreedora del beneficio de una sentencia en libertad.”
En el caso, al acusado se le imputó la comisión del delito de homicidio y violación al Art. 8 de la Ley de Armas de Puerto Rico, ante. Celebrado el juicio, el acusado fue declarado culpable del delito de homicidio y absuelto de la infracción a la Ley de Armas de Puerto Rico, ya que tenía licencia de poseer y portar arma de fuego. La opinión resaltó este último hecho para distinguir el caso de la situación en Pueblo v. Álvarez Rodríguez, ante. Concluimos, como señalamos previamente, que la Ley Núm. 33 tenía como propósito proteger a la sociedad de los criminales de oficio. Interpretando restrictivamente la Ley Núm. 33, y tomando en consideración ese historial y propósito legislativo, indicamos entonces lo siguiente:
“Entendemos que el legislador no contempló, por lo cual no pretendió excluir del beneficio de una sentencia en probatoria a una persona convicta por el delito de homicidio utilizando un arma de fuego para la cual tenía licencia de poseer y portar.” (Énfasis nuestro.) Pueblo v. Negrón Caldero, ante, pág. 422.
*922 De Pueblo v. Negrón Caldero, ante, debemos colegir que la Ley Núm. 33 debe interpretarse limitadamente. Esto es cónsono con la norma reiterada de derecho penal, de que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado, y liberalmente cuando le favorece. Pueblo v. Martínez Rivera, 144 D.P.R. 631, 647 (1997); Pueblo v. Arandes de Celis, 120 D.P.R. 530, 533 (1988); Mari Brás v. Alcaide, 100 D.P.R. 506, 516 (1972); Pueblo v. Padilla, 20 D.P.R. 276 (1914).
En rigor, sin embargo, y a pesar de lo discutido anteriormente, parece evidente que lo dispuesto en Pueblo v. Álvarez Rodríguez, ante, y en Pueblo v. Negrón Caldero, ante, no dispone expresamente de la controversia ante nuestra consideración. Veámosla entonces con mayor detenimiento.
V
Como indicamos inicialmente, el peticionario ha sostenido que la Junta podía asumir jurisdicción en su petición ya que, luego de un preacuerdo, se enmendó la acusación para eliminar la alegación de utilización de armas de fuego durante la comisión del delito. Fue de los delitos así enmendados de los que se declaró culpable en corte abierta y por los que fue convicto. El peticionario nos indicó también que al momento de evaluar su petición de libertad bajo palabra, la Junta no podía considerar un hecho que no formó parte de su alegación de culpabilidad y del delito por el cual fue convicto y eventualmente sentenciado.(5) El ar *923 gumento principal gira en torno a que al eliminarse de la acusación la alegación de uso de arma de fuego, éste nunca se declaró culpable de ese hecho, por lo que la Junta tenía jurisdicción para atender su petición de excarcelación.
La acusación es la alegación que sirve de base para el juicio, ya que son los hechos consignados allí los que permiten identificar el delito imputado y las disposiciones estatutarias involucradas. Ésta es suscrita y jurada por el fiscal y presentada en el Tribunal Superior. Reglas 34 y 35 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véanse: Pueblo v. Ríos Alonso, 156 D.P.R. 428 (2002); Pueblo v. González Olivencia, 116 D.P.R. 614, 617 (1985); Pueblo v. Candelario Couvertier, 100 D.P.R. 159 (1971); Pueblo v. Bermúdez, 75 D.P.R. 760, 763—764 (1954). Es en función de la acusación que el acusado queda informado de la naturaleza y extensión de la conducta que se le imputa para que así pueda desarrollar su defensa. Pueblo v. Ríos Alonso, ante, pág. 437. Chiesa, op. cit., Sec. 24.1 et seq.
Hemos resuelto que la acusación debe interpretarse con liberalidad y que no es necesario incluir un “lenguaje estereotipado o técnico o talismánico”. Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 694 (1981). Véase Chiesa, op. cit., pág. 145. Lo esencial es que “la acusación consigne los elementos del delito imputado en forma que constituya debida notificación de la naturaleza y causa de los cargos”; de lo contrario, la acusación es insuficiente. Pueblo v. Santiago Cedeño, 106 D.P.R. 663, 666 (1978). Véase, además, Pueblo v. Meléndez Cartagena, 106 D.P.R. 338, 341-342 (1978). Como señala acertadamente el profesor Chiesa, op. cit., pág. 149, “[p]uede afirmarse, en fin, que la suficiencia de una acusación, se evalúa en forma liberal en cuanto al lenguaje utilizado en la imputación del delito, aunque en *924 forma rigurosa en cuanto a la necesidad de imputar todos los elementos del mismo”.
Aun cuando el hecho de que la utilización de un arma de fuego no es propiamente un elemento del delito en este caso, resolvemos que para efectos de determinar si tiene jurisdicción la Junta sobre una petición de excarcelación, ese hecho debe considerarse como tal. En vista de lo cual, para que aplique la inhabilitación de la Ley Núm. 33, la alegación sobre la utilización del arma de fuego tiene que haber sido consignada en la acusación que dio base a la declaración de culpabilidad y que sirvió como fundamento para el fallo condenatorio dictado. Adviértase que estamos ante una declaración de culpabilidad producto de un preacuerdo que no incluyó el hecho de que se utilizó un arma de fuego en la comisión del delito base. Por lo tanto, permitir que se considere ese hecho para efectos de la determinación de la jurisdicción de la Junta, supondría avalar una incongruencia insubsanable con lo alegado en la acusación y lo que quedó probado mediante la declaración de culpabilidad, para con ello, hacer más onerosa la sentencia impuesta al convicto.
Somos del criterio de que, cuando la Junta evalúe si tiene jurisdicción o no sobre una petición de excarcelación, los hechos que habrá de sopesar tienen que haberse notificados previamente al convicto, de la misma forma que exigimos que, ante una alegación preacordada, el tribunal le notifique al acusado que el delito por el cual se declara culpable lo inhabilita para recibir los beneficios de una libertad bajo palabra, para que éste quede adecuadamente informado del castigo al que se expone. La manera de así hacerlo es cerciorándonos de que sean sólo los hechos que consten en la acusación los que se consideren para efectos de evaluar su jurisdicción, pues son de éstos de los cuales el acusado se declaró culpable. Después de todo, la adecuada notificación es un componente básico del debido proceso de ley. Pueblo v. Rivera Rivera, 145 D.P.R. 366 (1988).
*925 De otra parte, no nos convence el argumento del Procurador General en el sentido de que al declararse culpable el acusado bajo los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, ante, de poseer y portar un arma de fuego sin licencia, se probó “la presencia de un arma de fuego en la escena de los hechos” y ello es suficiente para cumplir con la exigencia de la Ley Núm. 33. La Ley Núm. 33 exige que se utilice el arma de fuego en la comisión del delito o su tentativa, lo que es muy distinto a que se posea un arma de fuego sin licencia para ello, aunque sea en el lugar de los hechos. La posesión no es sinónimo de la utilización. Ya hemos advertido que la Ley Núm. 33, como todo estatuto penal, tiene que ser interpretado de forma restrictiva y no expansivamente, como sugiere el Procurador General.(6)
La determinación de si se usó o no un arma de fuego en la comisión de un delito hay que hacerla en virtud del fallo condenatorio y la sentencia emitida por el tribunal, y no por las denuncias, acusaciones iniciales, órdenes de arresto u otros documentos que pudieran formar parte del expediente criminal del convicto. Ciertamente, resolver lo contrario implicaría, entre otras cosas, un serio cuestionamiento sobre la validez de la alegación de culpabilidad del peticionario en este caso.
Por los fundamentos antes mencionados, procede revocar la decisión del Tribunal de Apelaciones y concluir que la Junta de Libertad bajo Palabra tiene jurisdicción para atender la solicitud del peticionario.

 Sobre los beneficios o los perjuicios de las alegaciones preacordadas, véanse: S. Bibas, Plea Bargaining Outside the Shadow of Trial, 117 Harv. L. Rev. 2463 (2004); W. J. Stuntz, Plea Bargaining and Criminal Law’s Disappearing Shadow, 117 Harv. L. Rev. 2548 (2004); J. Palmer, Abolishing Plea Bargaining: An End to the Same Old Song and Dance, 26 Am. J. Crim. L. 505 (1999); D.D. Guidorizzi, Should We Really Ban Plea Bargaining?: The Core Concerns of Plea Bargining Critics, 47 Emory L.J. 753, 754 (1998); R.E. Scott y W.J. Stuntz, A Reply: Imperfect Bargains, Imperfect Trials, and Innocent Defendants, 101 Yale L.J. 2011, 2015 (1992).

 Para un recuento histórico sobre el sistema de libertad a prueba en Estados Unidos, véanse: R. Clegg, Probation and Parole: Principles and Practices, Illinois, Ed. C.C. Thomas, 1964; N. Cohen y J. Gobert, The Law of Probation and Parole, Colorado, Ed. Shepard’s/Mc Graw Hill, 1983, Secs. 1.05-1.08.

 Este párrafo no fue incluido, suponemos que por inadvertencia, en las Leyes de Puerto Rico Anotadas. Véase 4 L.P.R.A. sec. 1503(a).

 No surge de la opinión si la acusación formulada en este caso incluyó el agravante de utilización del arma de fuego en la comisión del delito.

 Para esta última proposición, el peticionario invocó lo dispuesto en Apprendi v. New Jersey, 531 U.S. 466 (2000), y su progenie. En Apprendi, el Tribunal Supremo de Estados Unidos sostuvo que el debido proceso de ley, así como el derecho a juicio por jurado, exigen que cualquier hecho que tenga como resultado un incremento en la sentencia máxima a que se expone un acusado, tiene que ser probado más allá de duda razonable por el juzgador de los hechos. Específicamente, el Tribunal señaló: “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum ... must be submitted to a jury, and proved beyond a reasonable doubt.” (Énfasis nuestro.) íd., pág. 490. Subsiguientemente, el Tribunal Supremo ha ido construyendo sobre Apprendi. E.g., Harris v. United States, 536 U.S. 545 (2002); Ring v. Arizona, 536 U.S. 584 (2002); Blakely v. *923 Washington, 542 U.S. 296 (2004); Shepard v. United States, 544 U.S. 13 (2005); United States v. Booker, 543 U.S. 220 (2005). En la situación ante nuestra consideración es evidente que Apprendi no aplica. Véase Pueblo v. Montero Luciano, 169 D.P.R. 360 (2006).

 A tenor con el resultado a que llegamos, se hace innecesario discutir los otros señalamientos del Procurador General.