EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elvin Rivera Beltrán<br><br>      Apelante<br><br>          v.<br><br>  Junta de Libertad Bajo Palabra<br><br>      Apelado | Certiorari<br><br>2007 TSPR 8<br><br>170 DPR \_\_\_\_ |

Número del Caso: AC-2005-24

Fecha: 18 de enero de 2007

Tribunal de Apelaciones:

          Región Judicial de Aguadilla


Juez Ponente:
          Hon. Roberto L. Córdova Arone


Abogados de la Parte Apelante:

          Lcdo. Rafael E. Rodríguez Rivera
          Lcdo. José R. Roque Velázquez
          Lcdo. Joel Román Román

Oficina del Procurador General:

          Lcdo. Salvador J. Antonetti Stutts
          Procurador General

          Lcda. Amir Cristina Nieves Villegas
          Procuradora General Auxiliar




Materia: Ley Número 33 de 1993


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elvin Rivera Beltrán

    Apelante

       v.                              AC-2005-024

Junta de Libertad Bajo Palabra

    Apelado

SENTENCIA

San Juan, Puerto Rico, a 18 de enero de 2007.

El Sr. Elvin Rivera Beltrán (en adelante, Rivera Beltrán) recurre de una decisión del Tribunal de Apelaciones, que a su vez confirmó una determinación de la Junta de Libertad Bajo Palabra (en adelante, Junta), en la que se resolvió que el peticionario no es elegible para disfrutar del beneficio de libertad bajo palabra al amparo de la Ley Núm. 33 de 27 de julio de 1993 (en adelante, Ley Núm. 33). El recurso nos permite resolver si una persona, que hace una alegación de culpabilidad que no incluye el uso de un arma de fuego en la

comisión de los delitos imputados, es elegible para disfrutar del beneficio de libertad bajo palabra aun cuando fue acusado por ese hecho.

I

Rivera Beltrán fue acusado por los delitos de recibo de bienes apropiados ilegalmente, robo domiciliario, tentativa de asesinato y por infracción a los Arts. 4, 6 y 8 de la Ley de Armas. En la acusación se alegó que utilizó un arma de fuego en la comisión de los delitos imputados.

Durante el juicio, Rivera Beltrán y el Ministerio Público llegaron a un acuerdo, en virtud del cual se enmendó la acusación para eliminar toda referencia al uso de un arma de fuego en la comisión de los delitos. Conforme al acuerdo, el acusado se declaró culpable de los delitos según imputados en la acusación enmendada. Aceptado el acuerdo y la alegación de culpabilidad, el tribunal lo sentenció.

Posteriormente, Rivera Beltrán solicitó a la Junta que le concediera el beneficio de libertad bajo palabra. Sin embargo, la Junta se declaró sin jurisdicción por entender que la Ley Núm. 33 excluye del beneficio solicitado a la persona que haya utilizado un arma de fuego en la comisión de un delito grave o su tentativa.

Inconforme, Rivera Beltrán acudió ante el Tribunal de Apelaciones, aduciendo que la Junta erró al declararse sin jurisdicción toda vez que él nunca fue sentenciado

por haber utilizado un arma de fuego. Dicho foro confirmó la decisión de la Junta. Insatisfecho con el dictamen, Rivera Beltrán apela ante nos y alega que erró el foro intermedio al confirmar la determinación de la Junta sin considerar que la sentencia condenatoria no incluyó la determinación sobre el uso de un arma de fuego en la comisión de los delitos.

Acogimos el recurso como una petición de *certiorari* y acordamos expedir. Las partes han comparecido a exponer sus respectivas posiciones. Conforme a ello, resolvemos.

## II

La controversia del caso de autos se limita a establecer si la elegibilidad para el beneficio de libertad bajo palabra debe determinarse a la luz de la sentencia o el fallo condenatorio o si, por el contrario, la Junta está facultada para hacer su determinación a la luz de la totalidad del expediente del proceso judicial.

En Puerto Rico, la libertad bajo palabra está regulada por la Ley Núm. 118 de 22 de Julio de 1974, 4 L.P.R.A. Sec. 1501 *et seq*. (en adelante, Ley Núm. 118) y constituye un privilegio que se otorga en el mejor interés de la sociedad y cuando las circunstancias establezcan que propiciará la rehabilitación del confinado. *Lebrón Pérez v. Alcaide, Cárcel de Distrito*, 91 D.P.R. 567 (1964).

La Ley Núm. 118 creó la Junta de Libertad Bajo Palabra y le concedió discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales de Puerto Rico, sujeto a que cumpla el término mínimo dispuesto por ley y que no se trate de los delitos excluidos de dicho beneficio. 4 L.P.R.A. Sec. 1503; *Toro Ruiz v. J.L.B.P. y otros*, 134 D.P.R. 161 (1993); *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. 849 (1992).

En vista de que se trata de un privilegio, la Asamblea Legislativa puede limitar su concesión y excluir del beneficio a las personas que hayan cometido ciertos delitos. Así lo hizo cuando aprobó la Ley Núm. 33. Por considerar que es peligroso que las personas que delinquen utilizando armas de fuegos estén en la libre comunidad antes de que cumplan el término de reclusión, el Legislador estableció que "[en] los casos en que se determine que la persona utilizó[1] un arma de fuego en la comisión de un delito grave o su tentativa, no se concederá el beneficio de la libertad bajo palabra". Leyes de Puerto Rico, 1993, Parte 1, pág. 174 (Énfasis suplido).

Por tanto, para que una persona quede excluida del beneficio de libertad bajo palabra, tiene que haber una

[1] La Ley Núm. 33 originalmente excluía del beneficio de libertad bajo palabra a la persona que *utilizó o intentó utilizar* un arma de fuego en la comisión de un delito grave o su tentativa. Posteriormente, dicha ley fue enmendada por la Ley Núm. 28 de 1 de julio de 1997, que suprimió la parte "o intentó utilizar".

determinación de que la persona utilizó un arma de fuego en la comisión de un delito grave o su tentativa. En nuestro ordenamiento dicha determinación surge del fallo o de la sentencia recaída, que recoge los hechos efectivamente probados ante el juzgador[2]. Por ende, la Junta tiene que considerar el fallo o la sentencia emitida por el tribunal sentenciador para determinar si una persona recluida es elegible para el beneficio de libertad bajo palabra.

Como consecuencia, la Junta no puede utilizar la denuncia o la acusación para este propósito, pues dichos documentos contienen hechos que no se probaron en el proceso judicial, luego de brindarle al acusado todas las garantías del debido proceso de ley. Los mismos sólo son documentos con los cuales se comienza el trámite procesal penal que imputa la comisión de un posible delito. *Rabell v. Tribunal*, 102 D.P.R. 39 (1974). De utilizarse la denuncia o la acusación, se estaría privando a una persona de la oportunidad de solicitar la concesión de la libertad bajo palabra basado en hechos que no fueron probados por el juzgador.

---

[2] El fallo es el pronunciamiento de absolución o culpabilidad que hace el juez en virtud de la alegación de culpabilidad del acusado, o el veredicto del jurado o de su propia determinación en casos por tribunal de derecho. Por otro lado, la sentencia es el pronunciamiento judicial de la pena que se le impone al acusado tras el fallo de culpabilidad. E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. I, (1993), págs. 519, 522.

A tenor con lo dispuesto en la Ley Núm. 33, en *Pueblo v. Álvarez Rodríguez*, 154 D.P.R. 566 (2001), concluimos que una persona que ha sido convicta de un delito grave o su tentativa y que utilizó un arma de fuego no es acreedora al beneficio de una sentencia suspendida. En dicho caso el Tribunal expresamente declaró al acusado culpable de un delito grave mediante el uso de un arma de fuego. Ahora bien, este Tribunal no se ha pronunciado hasta ahora si dicha normativa se extiende cuando medie una alegación pre-acodada que no incluye el uso de un arma de fuego. Esa es precisamente la controversia de autos.

Al adjudicar la misma, partimos de la premisa que mediante las alegaciones pre-acordadas, un acusado puede declararse culpable del delito por el cual se le acusa, o bien por uno de grado inferior o relacionado. Una vez un acusado se declara culpable y el tribunal acepta la alegación de culpabilidad, la misma se hace formar parte de la sentencia. Como la sentencia recoge los hechos probados, su contenido es determinante para establecer la elegibilidad del beneficio de libertad bajo palabra. Por ende, si el tribunal acepta una alegación de culpabilidad que no incluye el uso de un arma de fuego, la Junta está impedida de utilizar ese hecho para determinar si el acusado es elegible para el beneficio de libertad bajo palabra, precisamente porque el mismo no se hizo formar parte de la sentencia.

Visto el derecho aplicable, analicemos los hechos ante nos.

## III

Rivera Beltrán recurre ante nos y cuestiona que la Junta erró al declararse sin jurisdicción en su caso. Sostiene que la sentencia condenatoria no incluyó la determinación sobre el uso de un arma de fuego en la comisión de los delitos y que, por tanto, la Junta no podía declarase sin jurisdicción. Específicamente, afirma que se declaró culpable de los delitos imputados después de que, en virtud de un preacuerdo con el fiscal, se eliminara de la acusación la alegación de la utilización de un arma de fuego en la comisión de dichos delitos. Aduce que nunca se declaró culpable del uso de un arma de fuego y que este hecho no quedó incorporado a la sentencia condenatoria, por lo que no podía ser considerado por la Junta para determinar su jurisdicción.

Por su parte, el Procurador General afirma que la declaración de culpabilidad por los delitos de poseer y portar un arma sin licencia es concluyente en cuanto a la presencia de un arma de fuego en la escena de los hechos. Aduce que es razonable concluir, como lo hizo la Junta, que el acusado usó dicha arma. No tiene razón.

Para determinar si se utilizó un arma de fuego en la comisión de los delitos imputados, la Junta venía obligada a usar criterios cónsonos con nuestro ordenamiento jurídico. En particular, la Junta no podía

declararse sin jurisdicción para entender en la solicitud de Rivera Beltrán a base de consideraciones fácticas que el juzgador no encontró probadas, y que no fueron admitidas por el peticionario en su alegación pre-acordada. Es por eso que la Junta tenía que considerar la sentencia condenatoria para determinar su jurisdicción.

Distinto al caso de *Pueblo v. Álvarez Rodríguez*, *supra*, en el cual se determinó que el acusado cometió el delito mediante el uso de un arma de fuego, Rivera Beltrán nunca se declaró culpable de la utilización del arma de fuego y ese hecho tampoco se le probó más allá de duda razonable. En vista de ello, y no habiendo otra razón para excluirlo de la elegibilidad para disfrutar del beneficio, concluimos que la Junta tenía jurisdicción para evaluar la solicitud de Rivera Beltrán. Nuestra decisión no implica que el peticionario tenga derecho a que se le conceda la libertad bajo palabra. Corresponde a la Junta evaluar, en el ejercicio de su discreción y conforme a los criterios establecidos por ley, si procede concederle dicho privilegio.

IV

Por los fundamentos expuestos anteriormente, se revoca la sentencia del Tribunal de Apelaciones. Se devuelve el caso a la Junta de Libertad Bajo Palabra para que oportunamente examine la solicitud de Rivera Beltrán

y determine si procede concederle los beneficios de la libertad bajo palabra.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Concurrente a la cual se unió el Juez Asociado señor Rebollo López. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elvin Rivera Beltrán

    Peticionario

       v.                     AC-2005-024

Junta de Libertad Bajo Palabra

    Recurrida


Opinión Concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une el Juez Asociado señor Rebollo López


San Juan de Puerto Rico, a 18 de enero de 2007

La controversia a resolver en este caso es si en virtud de la Ley Núm. 33 de 27 de julio de 1993, que excluyó del privilegio de libertad bajo palabra a toda persona que utilice un arma de fuego en la comisión de un delito grave o su tentativa, la Junta de Libertad bajo Palabra puede asumir jurisdicción en un caso en que el acusado --conforme un preacuerdo--, se declaró culpable de los delitos imputados luego de eliminarse de la acusación la alegación de uso de arma de fuego en la comisión del delito base, y bajo esos términos se hizo la alegación de culpabilidad.

Sólo puedo concurrir con el resultado del dictamen del Tribunal ya que entiendo que resulta

medular a la controversia ante nuestra consideración la discusión sobre la naturaleza de las alegaciones preacordadas y el contenido de las advertencias que se le deben hacer al acusado previo a que éste haga alegación de culpabilidad. La ausencia de una discusión profunda sobre estos asuntos, me impide prestarle mi conformidad a la sentencia dictada ya que sostengo que según suscrita la misma queda trunca. Después de todo, este caso se da en el contexto de una alegación preacordada.

**I**

Iniciamos exponiendo el trasfondo fáctico y procesal que dio lugar a la controversia traída ante nuestra atención, sobre el cual no hay controversia.

Por hechos ocurridos el 31 de marzo de 1998, Elvin Rivera Beltrán (el "peticionario" o "Rivera Beltrán") fue acusado por los delitos de tentativa de asesinato (3 cargos), por infracción de los Arts. 4, 6 y 8 de la Ley de Armas (5 cargos), por recibo de bienes apropiados ilegalmente (3 cargos), y por robo domiciliario (1 cargo). Se alegó en la denuncia y luego en la acusación, la utilización de un arma de fuego en la comisión de los delitos.

El 16 de mayo de 2000, durante la celebración del juicio criminal ante jurado, las partes manifestaron haber llegado a unos acuerdos y el Ministerio Público solicitó, como parte de estos acuerdos, las siguientes enmiendas a las acusaciones:

**Elvin Rivera Beltrán: Se elimine la alegación de reincidencia;** eliminar toda referencia al uso de arma de fuego **en los casos de Tentativa de Asesinato, Infr. Artículos 8 y 6 de Armas. En el caso de Robo Domiciliario en el mismo se** eliminaría el agravante **donde indica que 'los hechos fueron cometidos en la residencia de los perjudicados y** utilizaron armas de fuego **y una cuchilla para cometer el delito'. (Énfasis nuestro.)**

Véase Minuta del 16 de mayo de 2000. Apéndice del recurso de *certiorari*, pág. 52.

A esos efectos, se enmendó la acusación para reflejar los acuerdos entre el acusado y el Ministerio Público. El acusado se declaró entonces culpable por confesión en corte abierta de todos los delitos y el preacuerdo fue avalado por el tribunal. El cargo por violación al Art. 4 de la Ley de Armas fue imputado en su modalidad de delito menos grave. Así se hizo constar en la sentencia dictada. Apéndice del recurso de *certiorari*, pág. 54.

El 22 de mayo de 2000, el peticionario fue sentenciado a una pena concurrente de 15 años de cárcel por todos los delitos. Apéndice del recurso de *certiorari*, pág. 58.

Eventualmente, el peticionario solicitó a la Junta de Libertad bajo Palabra (la "Junta") que lo evaluara para disfrutar del beneficio de libertad bajo palabra. El 12 de julio de 2004, la Junta emitió una resolución mediante la cual se declaró sin jurisdicción por disposición expresa de la Ley Núm. 33 de 27 de julio de 1993, según enmendada, ("Ley Núm. 33") la cual, como se señaló, excluye del privilegio de libertad bajo palabra a toda persona que

utilice un arma de fuego en la comisión de un delito grave o su tentativa.

Inconforme con esta determinación, el peticionario presentó un recurso de revisión ante el Tribunal de Apelaciones. En el recurso presentado apuntó que la Junta había errado al declararse sin jurisdicción porque la sentencia que le fue impuesta eliminó, expresamente, la referencia al uso de arma de fuego. En su escrito, expresó que fue su objetivo al declararse culpable que se eliminara tal alegación de suerte que pudiera cualificar, en su momento, para los beneficios de libertad bajo palabra. El Ministerio Público no ha refutado tal aseveración.

El Tribunal de Apelaciones confirmó la resolución de la Junta. El foro apelativo intermedio resolvió, sin mayor discusión, que el texto de la ley era claro al privar de jurisdicción a la Junta de Libertad bajo Palabra en casos donde se utilizó un arma de fuego en la comisión de un delito grave o su tentativa. Indicó que el hecho de que como resultado de la alegación preacordada se eliminara la alegación relacionada con el uso de un arma, era inconsecuente porque la transacción entre el acusado y el Ministerio Público no podía conferirle jurisdicción a la Junta allí donde la ley se la negaba.

Insatisfecho nuevamente, el peticionario presentó un escrito de apelación ante este Tribunal. En el mismo señaló como error lo siguiente:

Erró el Tribunal de Apelaciones al confirmar la resolución emitida por la Junta de Libertad

bajo Palabra, en la agencia se declaró sin jurisdicción para considerar el referido del Sr. Elvin Rivera Beltrán en menosprecio de lo resuelto por el tribunal sentenciador que el Sr. Rivera Beltrán no utilizó un arma de fuego en la comisión del delito violentando así el derecho constitucional del apelante a un debido proceso de ley, a la presunción de inocencia, al derecho a un juicio justo e imparcial, violentando a su vez la separación de poderes.

El pasado 22 de julio de 2005 acogimos la apelación presentada como una petición de *certiorari* y expedimos el auto. El peticionario presentó el alegato correspondiente y posteriormente, el Procurador General hizo lo propio en representación de la Junta de Libertad bajo Palabra. Estando en posición de resolver, pasamos a así hacerlo.

## II

Como indicamos inicialmente, la cuestión a resolver es si la Ley Núm. 33 le impide a la Junta de Libertad bajo Palabra asumir jurisdicción para atender la solicitud del peticionario de excarcelación bajo palabra. Ello, en virtud de que en la sentencia dictada en este caso se eliminó la alegación de utilización de un arma de fuego en la comisión del delito base, como resultado del preacuerdo a que llegó el Ministerio Público con la defensa y que fue avalado por el tribunal sentenciador. Alegación que fue eliminada de la acusación enmendada.

El peticionario sostiene que nada impide que la Junta asuma jurisdicción y atienda su solicitud de libertad bajo palabra. Argumentó en su recurso que la Junta de Libertad bajo Palabra no puede hacer una determinación de hechos —que se utilizó un arma durante la comisión del delito—

contraria a lo que adjudicó ya el foro sentenciador al recaer el fallo condenatorio en este caso, para con esa determinación rehusarse a atender su petición. Indicó que al eliminarse de la acusación la alegación de uso de arma de fuego, ese hecho no fue probado más allá de duda razonable ante el juzgador de los hechos, ni fue admitido por el acusado, por lo que no puede servir de base o fundamento para negarse a atender su petición de libertad bajo palabra. El peticionario basó su reclamo, principalmente, en lo dispuesto por el Tribunal Supremo de los Estados Unidos en *Apprendi v. New Jersey*, 531 U.S. 466 (2000) y su progenie.

El Procurador General por su parte, adelantó los siguientes fundamentos para sostener la determinación de la Junta, a saber: Primero, que la alegación preacordada no puede impedirle a la Junta que cumpla con la Ley Núm. 33 y actúe acorde a ésta. Segundo, que con la alegación de culpabilidad por los Artículos 6 y 8 de la Ley de Armas, --poseer y portar un arma cargada sin licencia-- se probó "la presencia de un arma de fuego en la escena de los hechos", lo que era suficiente para cumplir con la Ley Núm. 33. Alegato del Procurador General, págs. 13-15. En cuyo caso, era razonable que la Junta concluyera, al evaluar el expediente, que el peticionario "usó la misma durante los hechos." Finalmente, adujo que existiendo evidencia sustancial en el récord de la agencia sobre ese particular procede confirmar la determinación de la Junta. En

específico, el Procurador General apuntó que la Junta tomó conocimiento judicial del expediente criminal oficial del peticionario donde constan las acusaciones presentadas originalmente en este caso.

Pasemos entonces a evaluar los planteamientos de las partes. Iniciamos nuestra discusión repasando la naturaleza de la alegación preacordada pues es en este contexto que se plantea la controversia de autos. Luego entonces discutiremos el alcance la Ley Núm. 33.

### III

**Las Alegaciones Preacordadas**

La decisión de cuándo encausar a un sospechoso y qué delito imputar es una decisión de la entera incumbencia del Poder Ejecutivo. *Pueblo v. Castellón*, 151 D.P.R. 15, 24 (2000). Así también es prerrogativa del Poder Ejecutivo, una vez presentada la correspondiente acusación, solicitar la reducción o archivo de cargos criminales, bien como parte de un proceso de negociación preacordada, o no.

Las alegaciones preacordadas son un componente indispensable del sistema de justicia penal. Constituyen un acuerdo de voluntades de naturaleza *sui generis* que depende, para su consumación, de la aprobación final del tribunal. *Pueblo v. Santiago Agricourt*, 147 D.P.R. 179, 194 (1998). **No hay duda que éstas representan el mecanismo principal de disposición de los casos penales.** *Pueblo v. Figueroa García*, 129 D.P.R. 798 (1992)("Sin las alegaciones preacordadas sería difícil enjuiciar a todas las personas

acusadas de cometer delitos dentro de los términos requeridos por el ordenamiento procesal y por la Constitución.") Véase, *Pueblo v. Mojica Cruz*, 115 D.P.R. 569 (1984). Véase también, *Santobello v. New York*, 404 U.S. 257, 260 (1971)("the disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining' is an essential component of the administration of Justice."); *Brady v. United States*, 397 U.S. 742 (1970).[3]

Son innumerables las razones que explican la razón de ser de la alegación preacordada y la utilidad que la misma supone tanto para el ministerio público como para el acusado. Véase nota al calce 2, *infra*. A modo de ejemplo valga recalcar que no es inusual que un acusado, confrontado con una acusación por un delito, o bajo unas condiciones, que le inhabilite para recibir los beneficios de una sentencia suspendida o libertad bajo palabra, procure negociar con fiscalía declararse culpable de otro delito --o bajo otras circunstancias-- que no conlleve tales consecuencias. *E.g.*, W. LaFave, J. Israel, N. King., *Criminal Procedure*, West Group, Minneapolis, 1999, Vol. 5,

---

[3] Sobre los beneficios o los perjuicios de las alegaciones preacordadas véase, Bibas, Plea Bargaining Outside the Shadow of Trial, 117 *Harv. L. Rev.* 2463 (2004); Stuntz, Plea Bargaining and Criminal Law's Disappearing Shadow, 117 *Harv. L. Rev.* 2548 (2004); Palmer, Abolishing Plea Bargaining: An End to the Same Old Song and Dance, 26 *Am. J. Crim. L.* 505 (1999); Guidorizzi, Should We Really "Ban Plea Bargaining?: The Core Concerns of Plea Bargining Critics, 47 *Emory L. J.* 753, 754 (1998); Scott, Stuntz, A Reply: Imperfect Bargains, Imperfect Trials, and Innocent Defendants*,* 101 *Yale L. J.* 2011, 2015 (1992).

sec. 21.1, pág. 5 ("by his plea, the defendant may avoid a high statutory minimum sentence, **or a statutory bar to probation**.") (Énfasis nuestro.)

La Regla 72 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, regula el procedimiento de las alegaciones preacordadas y el efecto de las mismas una vez sometidas para la aprobación del tribunal. Mediante la utilización de este mecanismo el acusado, **renunciando a su derecho a no auto incriminarse y a someterse a un juicio por jurado**, acuerda declararse culpable en corte abierta del delito negociado. **Toda vez que una declaración de culpabilidad conlleva la renuncia de estos derechos constitucionales, la misma tiene que ser voluntaria, con conocimiento y con conciencia de todas las implicaciones o consecuencias directas que ésta conlleve**. Véase, *Brady v. United States*, *ante,* pág. 748; *Henderson v. Morgan*, 426 U.S. 637 (1976). Véase además, W. LaFave, J. Israel, N. King., *op. cit.,* sec. 21.1.

De ahí que la Regla 72, inciso 7, provea que, aceptada la alegación preacordada por el tribunal, el juez "deberá cerciorarse de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado. . . ." Aunque el procedimiento para determinar si una declaración de culpabilidad es voluntaria e inteligente "no requiere determinado ritual", el juez viene obligado a inquirir del acusado si comprende la naturaleza de su declaración de culpabilidad, y tiene pleno conocimiento de sus

implicaciones, para lo cual debe advertirle de las consecuencias directas de la misma. *Díaz Díaz v. Alcalde*, 101 D.P.R. 846, 857 (1973). Una declaración de culpabilidad sin pleno conocimiento, conformidad y voluntariedad de parte del imputado puede ser impugnada por ofender el debido procedimiento de ley. *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)("only when it develops that defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause.") Véase, *Santobello v. New York*, 404 U.S. 257, 261-261 (1971). Véase además, E. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum,* Colombia, 1993, vol. III, sec. 20.3, págs. 591-592.

El pleno conocimiento requiere, necesariamente, que se le informe al acusado de la sentencia a que se expone por ser ésto una consecuencia directa de su declaración de culpabilidad. En *Díaz Díaz, ante*, pág. 857, indicamos que el juez debe informarle al acusado "de la pena que el delito por el cual está procesado conlleva, **haciéndole saber el mínimo y el máximo**." (Énfasis nuestro.) En la medida que el acusado no tenga la plena conciencia del castigo a que se expone, no es posible hablar de una declaración de culpabilidad "con conocimiento" como exige la Regla 72, y la misma sería constitucionalmente deficiente.

**Cabe preguntarse entonces, si el acusado debe ser advertido también de que el delito del que se declara**

**culpable lo inhabilita para recibir los beneficios de libertad bajo palabra. La respuesta tiene que ser en la afirmativa.** No hay duda que declararse culpable de un delito que le impida al acusado cualificar para este beneficio afecta el tiempo que la persona permanece encarcelada y, en su consecuencia, lo expone a un castigo mayor y más oneroso.

Habida cuenta de lo anterior, este es un factor que el acusado debe sopesar a la hora de tomar su decisión de declararse culpable y bajo qué términos, en vista del efecto que tendrá su declaración sobre el tiempo que permanecerá encarcelado. Véase, *Bye v. United States*, 435 F.2d 177, 179 (2nd Cir. 1970)("We agree with the position . . . that ineligibility for parole is indeed a consequence of the plea about which a defendant . . . must be informed."); *Berry v. United States*, 412 F.2d 189, 192 (3rd Cir. 1969)("Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. When one enters a plea of guilty he should be told what is the worst to expect."); *Harris v. United states*, 426 F.2d 99 (6th Cir. 1970); *Jenkins v. United States*, 420 F.2d 433 (10th Cir. 1970); *Durant v. United States*, 410 F.2d 689 (1st Cir 1969); *State v. Kovack*, 453 A.2d 521, 525 (N.J. 1982)("a defendant must be informed of any period of parole ineligibility that is likely to become part of his sentence . . . the court must make certain that defendant has been made aware of any loss

of parole opportunities that may be a component of the sentence."); *State v. Byrge*, 614 N.W.2d 477, 495 (Wis. 2000). Véase además, W. LaFave, J. Israel, N. King, *op. cit.*, sec. 21.4(d), pág. 170 ("the better view is that the defendant should be advised if the offense to which he is pleading may not lead to parole"), y casos en nota al calce 97.

El hecho que el beneficio de libertad a prueba sea una gracia legislativa y no un derecho del convicto en nada varía el resultado. La exigencia de "pleno conocimiento" de las consecuencias directas de la declaración de culpabilidad de la Regla 72 de las Reglas de Procedimiento Criminal, es corolario del debido proceso de ley pues tal declaración supone una renuncia de derechos constitucionales.

**IV**

**El Régimen de Libertad bajo Palabra y la Ley Núm. 33**

**A**

El sistema de libertad bajo palabra está reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. secs. 1501 *et seq.* Mediante este sistema se permite que una persona que haya sido convicta y sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder la libertad. Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad. 4

L.P.R.A. sec. 1503; *Maldonado Elías v. González Rivera*, 118
D.P.R. 270, 275 (1987).[4]  Este privilegio es un componente
del proceso de rehabilitación del confinado.  Se considera
que mientras disfrutan del mismo están, técnicamente,
extinguiendo su condena.  Véase, Logan, The Importance of
Purpose in Probation Decision Making, 7 *Buff. Crim. L. Rev.*
171 (2003).

La Junta de Libertad bajo Palabra es el ente
gubernamental facultado por ley para administrar el sistema
de libertad bajo palabra.  La Junta podrá decretar la
libertad condicionada del convicto siempre y cuando éste
cumpla con los requisitos establecidos por la ley o por los
reglamentos.  El Art. 3(a),  de la Ley Núm. 118, 4 L.P.R.A.
sec. 1502(a), establece las condiciones generales que
sopesa la Junta cuando evalúa una petición de
excarcelación.  Entre otras cosas, el artículo dispone:

> La libertad bajo palabra será decretada para
> el mejor interés de la sociedad y cuando las
> circunstancias presentes permitan a la Junta
> creer, con razonable certeza, que tal medida
> habrá de ayudar a la rehabilitación del
> delincuente. Para determinar si concede o no la
> libertad bajo palabra la Junta tendrá ante sí
> toda la información posible sobre el historial
> social, médico, ocupacional y delictivo de cada
> confinado, incluyendo la actitud de la comunidad
> respecto a la libertad condicional del sujeto, y
> una evaluación que deberá someter a la
> Administración de Corrección.

---

[4] Para un recuento histórico sobre el sistema de libertad a
prueba en los Estados Unidos, véase, R. Clegg, *Probation
and Parole*, Charles c. Thomas, Illinois, 1964; N. Cohen, J.
Gobert, *The Law of Probation and Parole*, Shepard´s Mc Graw
Hill, Colorado, 1983, secs. 1.05-1.08.

La Junta tiene, como indicamos, discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales, **siempre que no se trate de delitos excluidos de dicho beneficio y que la persona hubiere cumplido el término mínimo dispuesto por ley**. *Toro Ruiz v. Junta de Libertad bajo Palabra*, 134 D.P.R. 161, 166 (1993); *Ortiz v. Alcalde Penitenciaría Estatal*, 131 D.P.R. 849, 858 (1992). Véase, N. Cohen, J. Gobert, *The Law of Probation and Parole*, Shepard´s Mc Graw Hill, Colorado, 1983, sec. 3.01.

**B**

La Ley Núm. 33 de 27 de julio de 1993, enmendó, entre otros, el Art. 3(a) de la Ley Núm. 118, para establecer que **"[e]n los casos en que se determine que la persona utilizó o intentó utilizar un arma de fuego en la comisión de un delito grave o su tentativa, no se concederá el beneficio de la libertad bajo palabra."** (Énfasis nuestro.) *Leyes de Puerto Rico*, 1993 Parte 1, pág. 174.[5] De igual forma, el Art. 2 de la Ley Núm. 33 excluyó del beneficio de sentencia suspendida a las personas que hubieran utilizado "un arma de fuego en la comisión de un delito grave o tentativa", enmendado a esos efectos la Ley de Sentencias Suspendidas y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1027.

---

[5] Este párrafo no fue incluido, suponemos por inadvertencia, en las Leyes de Puerto Rico Anotadas. Véase, 4 L.P.R.A. sec. 1503(a).

Sólo en dos ocasiones anteriores hemos interpretado la Ley Núm. 33, en ambas ocasiones en el contexto de la imposición de una sentencia suspendida.  En *Pueblo v. Negrón Caldero*, res. 28 de junio de 2002, 166 D.P.R. ___, 2002 TSPR 95, indicamos que el propósito de esta ley fue "proteger a la sociedad puertorriqueña de los criminales de oficio," por lo que la misma "excluyó del régimen de sentencia suspendida a los convictos de delito grave que hayan utilizado armas de fuego ilegalmente poseídas o portadas en la comisión del delito o su tentativa."  En igual sentido, *Pueblo v. Álvarez Rodríguez*, 154 D.P.R. 566, 570-571 (2001).  Huelga apuntar que el mismo fundamento es extensible a los casos de libertad bajo palabra.  Veamos los hechos de estos casos en detalle.

En *Pueblo v. Álvarez Rodríguez*, el acusado enfrentaba cargos por el delito de asesinato en primer grado por haber dado muerte a dos personas al hacerle varios disparos a cada uno con un revólver.  Además, enfrentaba cargos por infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico.  Celebrado el juicio, éste fue declarado culpable de los cargos que pesaban en su contra.  El foro de instancia dictó sentencia y le concedió el beneficio de una sentencia suspendida por entender que aplicaba al caso la norma establecida en *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530 (1999).

La controversia planteada fue si Álvarez podía ser acreedor a los beneficios de una sentencia suspendida, a la

luz de la aprobación de la Ley Núm. 33, la cual no estaba vigente al momento de resolverse *Zayas Rodríguez,* por lo que este último no era de aplicación. Determinamos entonces, que el texto de la Ley Núm. 33 **era claro y no podía ser ignorado.** A esos efectos indicamos que "si alguien ha sido convicto de un delito grave o su tentativa, y utilizó o intentó utilizar un arma de fuego durante la comisión de dicho delito, esta persona no tendrá derecho a una sentencia suspendida." 154 D.P.R. pág. 571.[6] Expresamos que aun cuando se considerara que la ley era "inflexible" y que ésta no representaba "la más sabia solución al problema del crimen en Puerto Rico" no podíamos arrogarnos "poderes legislativos" e ignorar el mandato claro del legislador.

Poco después de nuestra decisión en *Álvarez Rodríguez*, nos enfrentamos nuevamente a la Ley Núm. 33. En *Pueblo v. Negrón Caldero, ante*, en una intricada opinión, discutimos extensamente el historial legislativo de la Ley Núm. 33, para atender la siguiente controversia: "si una persona convicta por el delito de homicidio voluntario, cometido con un arma de fuego para la cual tenía licencia de poseer y portar, sigue siendo acreedor del beneficio de una sentencia en libertad." *Negrón Caldero, ante,* pág. 5.

En el caso, al acusado se le imputó la comisión del delito de homicidio y violación al Art. 8 de la Ley de

---

[6] No surge de la opinión si la acusación formulada en este caso incluyó el agravante de utilización del arma de fuego en la comisión del delito.

Armas, 25 L.P.R.A. sec. 418. Celebrado el juicio, el acusado fue declarado culpable del delito de homicidio y absuelto de la infracción a la Ley de Armas ya que tenía licencia de poseer y portar arma de fuego. La Opinión resaltó este último hecho para distinguir el caso de la situación en *Álvarez Rodríguez.* Concluimos, como señalamos previamente, que la Ley Núm. 33 tenía como propósito proteger a la sociedad de los criminales de oficio. Interpretando restrictivamente la Ley Núm. 33 y tomando en consideración ese historial y propósito legislativo, indicamos entonces lo siguiente:

> "Entendemos que el legislador no contempló, por lo cual no pretendió excluir del beneficio de una sentencia en probatoria a **una persona convicta por el delito de homicidio utilizando un arma de fuego para la cual tenía licencia de poseer y portar.**" (Énfasis nuestro.)

De *Negrón Caldero* debemos colegir que la Ley Núm. 33 debe interpretarse limitadamente. Lo que es cónsono con la norma reiterada de derecho penal, que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado y liberalmente cuando le favorece. *Pueblo v. Martínez Rivera*, 144 D.P.R. 631, 647 (1997); *Pueblo v. Arandes de Celis*, 120 D.P.R. 530. 533 (1988); *Mari Brás v. Alcaide*, 100 D.P.R. 506, 516 (1972); *Pueblo v. Padilla*, 20 D.P.R. 276 (1914).

En rigor sin embargo y no empece a lo discutido anteriormente, parece evidente que lo dispuesto en *Álvarez Rodríguez* y *Negrón Caldero* no dispone expresamente de la

controversia ante nuestra consideración. Veámosla entonces con mayor detenimiento.

## V

Como indicamos inicialmente, el peticionario ha sostenido que la Junta podía asumir jurisdicción en su petición toda vez que, luego de un preacuerdo, se enmendó la acusación para eliminar la alegación de utilización de armas de fuego durante la comisión del delito. Y fue de los delitos así enmendados de los que se declaró culpable en corte abierta y por los que fue convicto. El peticionario nos indicó también que al momento de evaluar su petición de libertad bajo palabra, la Junta no podía considerar un hecho que no formó parte de su alegación de culpabilidad y del delito por el cual fue convicto y eventualmente sentenciado.[7] El argumento principal gira en torno a que al eliminarse de la acusación la alegación de

---

[7] Para esta última proposición, el peticionario invocó lo dispuesto en *Apprendi v. New Jersey,* 531 U.S. 466 (2000) y su progenie. En *Apprendi*, el Tribunal Supremo de los Estados Unidos sostuvo que el debido proceso de ley, así como el derecho a juicio por jurado, exigen que cualquier hecho que tenga como resultado **un incremento en la sentencia máxima a que se expone un acusado**, tiene que ser probado más allá de duda razonable por el juzgador de los hechos. Específicamente, el Tribunal señaló: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime **beyond the prescribed statutory maximum** . . . must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S., pág. 490. (Énfasis nuestro.) Subsiguientemente, el Tribunal Supremo ha ido construyendo sobre *Apprendi*. *E.g.,* *Harris v. United States*, 536 U.S. 545 (2002); *Ring V. Arizona*, 536 U.S. 584 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004) *Shepard v. United States*, 544 U.S. 13 (2005); *United States v. Booker*, 543 U.S. 220 (2005). En la situación ante nuestra consideración es evidente que *Apprendi* no aplica. Véase, *Pueblo v. Montero Luciano*, res. 30 de octubre de 2006, 169 D.P.R. ___, 2006 TSPR 158.

uso de arma de fuego, éste nunca se declaró culpable de ese hecho, por lo que la Junta tenía jurisdicción para atender su petición de excarcelación.

La acusación es la alegación que sirve de base para el juicio ya que son los hechos consignados en la misma los que permiten identificar el delito imputado y las disposiciones estatutarias involucradas. Ésta es suscrita y jurada por el fiscal y presentada en el Tribunal Superior. Reglas 34 y 35 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véase, *Pueblo v. Ríos Alonso,* 156 D.P.R. 428 (2002); *Pueblo v. González Olivencia*, 116 D.P.R. 614, 617 (1985); *Pueblo v. Candelaria Couvertier*, 100 D.P.R. 159 (1971); *Pueblo v. Bermúdez*, 75 D.P.R. 760, 763-764 (1954). Es en función de la acusación que el acusado queda informado de la naturaleza y extensión de la conducta que se le imputa para que así pueda desarrollar su defensa. *Rivera Alonso, ante*, pág. 437. Chiesa, *op. cit.*, secs. 24.1 *et seq*.

Hemos resuelto que la acusación debe interpretarse con liberalidad y no es necesario incluir un "lenguaje estereotipado o técnico o talismánico." *Pueblo v. Calviño Cerijo*, 110 D.P.R. 691, 694 (1981). Chiesa, *op. cit.*, pág. 145. Lo esencial es que "la acusación consigne los elementos del delito imputado en forma que constituya debida notificación de la naturaleza y causa de los cargos", de lo contrario la acusación es insuficiente. *Pueblo v. Santigo Cedeño*, 106 D.P.R. 663, 666 (1978).

Véase además, *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338, 341-342 (1978). Como señala acertadamente el profesor Chiesa, *op. cit.*, pág. 149, "[p]uede afirmarse, en fin, que la suficiencia de una acusación, se evalúa en forma liberal en cuanto al lenguaje utilizado en la imputación del delito, aunque en forma rigurosa en cuanto a la necesidad de imputar todos los elementos del mismo."

Aun cuando el hecho de utilización de arma de fuego no es propiamente un elemento del delito en este caso, resolvemos que para efectos de determinar si tiene jurisdicción la Junta de Libertad bajo Palabra sobre una petición de excarcelación, ese hecho debe considerarse como tal. En vista de lo cual, para que aplique la inhabilitación de la Ley Núm. 33, **la alegación sobre la utilización del arma de fuego tiene que haber sido consignada en la acusación que dio base a la declaración de culpabilidad y que sirvió como fundamento para el fallo condenatorio dictado.** Adviértase que estamos ante una declaración de culpabilidad producto de un preacuerdo que no incluyó el hecho de que se utilizó un arma de fuego en la comisión del delito base. Por lo tanto, permitir que se considere ese hecho para efectos de la determinación de la jurisdicción de la Junta, supondría avalar una incongruencia insubsanable con lo alegado en la acusación y lo que quedó probado mediante la declaración de culpabilidad; para con ello, hacer más onerosa la sentencia impuesta al convicto.

Somos del criterio que, cuando la Junta evalúe si tiene jurisdicción o no sobre una petición de excarcelación, los hechos que habrá de sopesar tienen que haberse notificados previamente al convicto, de la misma forma que exigimos que ante una alegación preacordada el tribunal le notifique al acusado que el delito por el cual se declara culpable lo inhabilita para recibir los beneficios de una libertad bajo palabra, para que éste quede adecuadamente informado del castigo a que se expone. La manera de así hacerlo, es cerciorándonos que sean solo los hechos que consten en la acusación los que se consideren para efectos de evaluar su jurisdicción, pues son de éstos de los cuales el acusado se declaró culpable. Después de todo, la adecuada notificación es un componente básico del debido proceso de ley. *Pueblo v. Rivera Rivera*, 145 D.P.R. 366 (1988).

De otra parte, no nos convence el argumento del Procurador General en el sentido de que al declararse culpable el acusado bajo los Arts. 6 y 8 de la Ley de Armas, de poseer y portar arma de fuego sin licencia, se probó "la presencia de un arma de fuego en la escena de los hechos" y ello es suficiente para cumplir con la exigencia de la Ley Núm. 33. La Ley Núm. 33 exige que **se utilice el arma de fuego en la comisión del delito o su tentativa**, lo que es muy distinto a que se posea un arma de fuego sin licencia para ello, aunque sea en el lugar de los hechos. La posesión no es sinónimo de la utilización. Ya hemos

advertido que la Ley Núm. 33, como todo estatuto penal, tiene que ser interpretado de forma restrictiva y no expansivamente como sugiere el Procurador General.[8]

La determinación de si se usó o no un arma de fuego en la comisión de un delito hay que hacerla en virtud del fallo condenatorio y la sentencia emitida por el tribunal, y no por las denuncias, acusaciones iniciales, órdenes de arresto, u otros documentos que pudieran formar parte del expediente criminal del convicto. Ciertamente, resolver lo contrario implicaría, entre otras cosas, un serio cuestionamiento sobre la validez de la alegación de culpabilidad del peticionario en este caso.

Por los fundamentos antes mencionados, procede revocar la decisión del Tribunal de Apelaciones y concluir que la Junta de Libertad Bajo Palabra tiene jurisdicción para atender la solicitud del peticionario.


                                    Anabelle Rodríguez Rodríguez
                                           Juez Asociada

---

[8] A tenor con el resultado a que llegamos, se hace innecesario discutir los otros señalamientos del Procurador General.